**HUDSON FOODS, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

**No. 78397.**

Supreme Court of Missouri,
En Banc.

May 28, 1996.

Juan D. Keller, John P. Barrie, Carole Lewis Iles, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Andrew J. Lay, Assistant Attorney General, St. Louis, for Respondent.

LIMBAUGH, Judge.

Hudson Foods, Inc. (Hudson) appeals the decision of the Administrative Hearing Commission (AHC) upholding the Director of Revenue's denial of Hudson's application for a direct pay authorization and sales tax exemption under § 144.030.2(12), RSMo 1994. Specifically, Hudson takes issue with the AHC's determination that the chilling, partial freezing, and solid freezing of dressed turkeys and chickens does not constitute secondary processing as that term is used in the statute. Because this case involves the construction of § 144.030.2(12), a revenue statute, we have jurisdiction. Mo. Const. art. V, § 3. The decision of the AHC is reversed and the case is remanded for a new hearing.

I.

Hudson has four poultry processing facilities in Missouri, one in Dexter and one in Noel, and two separate facilities in Springfield, one on Main Street and the other on Jefferson Street. At the Dexter, Noel, and Main Street plants, Hudson receives live birds. These live birds are then "dressed," meaning they are stunned, killed, bled, scalded, defeathered, and eviscerated. At this point, about 5% of the birds are culled because they are unsuitable for further processing. The remaining dressed birds then enter a chill system, basically a large vat full of ice and cold water, where the birds' temperature is lowered from approximately 80 to

90 degrees down to 40 degrees or less. This chilling inhibits enzymatic activity and bacterial growth, thereby reducing spoilage and increasing shelf life of the product, and some of the product is sold on the market as "fresh" birds. Those birds that are not sold are either crusted or frozen. A crusted bird has been further chilled to approximately 28 degrees, producing a thin frozen crust on the bird while the interior of the bird remains soft and unfrozen. Those remaining birds that are not crusted are then frozen solid. Both procedures extend the birds' shelf life and end all enzymatic activity and bacterial growth. Hudson claims that the production of unchilled, dressed birds constitutes primary processing while chilling, crusting, or freezing the birds constitutes secondary processing.[1]

The Jefferson Street plant in Springfield receives whole dressed turkeys and boneless turkey from the Main Street plant and boneless chicken from other sources. This meat is ground and roasted. Some of this meat is then smoked or fried. All of the cooked meat is then either chilled to 40 degrees, crusted, or frozen solid prior to sale. Hudson claims the cooking, be it frying, smoking, roasting, etc. of the meat, is primary processing while the chilling, crusting, or freezing of the cooked meat constitutes secondary processing.

Hudson applied for a direct pay authorization and sales tax exemption for the sales tax on its electricity purchases[2] associated with the chilling and freezing. The Director of Revenue (the Director) denied Hudson's request on the ground that material costs had not been included in the total production figures for the chilling/freezing process. Hudson appealed to the AHC, which found, like the Director, that each of Hudson's

plants engaged in only one unitary operation, with no separation between the alleged primary and secondary processing. Thus, material costs should have been included in the calculations, in which case Hudson could not qualify for the exemption.

## II.

Section 144.030.2(12) provides a sales tax exemption for the following:

> Electrical energy used in the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, if the total cost of electrical energy so used exceeds ten percent of the total cost of production, either primary or secondary, exclusive of the cost of electrical energy so used.

As stated, Hudson seeks the exemption for its chilling and freezing procedures.

In *Mid–America Dairymen v. Director of Revenue*, decided today, we held that in order to qualify for the exemption under the aforementioned statute, the taxpayer must prove that the stage of production in question works a transformation on the subject matter and results in something which has a new identity, use, and market value. Because neither the parties nor the AHC had the benefit of this clarifying definition of processing, we reversed and remanded the case for a new hearing. A new hearing is necessary in this case, as well, except as to one issue for which the record is sufficient to permit our review. That issue is whether the chilling, crusting, and freezing procedures may constitute processing. We find that they may, but decline to determine on

---

1. In its brief, Hudson characterizes chilling, crusting, and freezing alternately as manufacturing and as manufacturing processes. We find it largely irrelevant to our analysis as to the precise term with which the taxpayer in this case labels its procedures because we find there is little to no difference between the terms "processing" and "manufacturing," as a practical matter. *See, e.g., Mid–America Dairymen, Inc. v. Director of Revenue,* 924 S.W.2d 280, 283 (Mo. banc 1996); *State ex rel. Union Elec. Co. v. Goldberg,* 578 S.W.2d at 924.

2. Hudson applied for the exemptions for the years 1989–1991 for the Dexter, Noel, and Main Street plants, and for 1990 to 1991 for the Jefferson Street plants. In all cases, the utilities from which Hudson purchased electric power have agreed to apply for and transmit any refund of the sales tax paid on the electricity purchases in those years, should Hudson succeed in obtaining the exemptions.

this record whether Hudson engages in both *primary* and *secondary* processing, and instead remand that issue for a new hearing by the AHC, as we shall explain hereafter.

This Court has never addressed whether the cooling or freezing of materials constitutes processing. The AHC concluded that freezing and crusting may constitute processing but that chilling does not. It based its conclusion on the Iowa Supreme Court's decision in *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm'n*, 81 N.W.2d 437 (Iowa 1957), in which the court observed:

> The foodstuffs ... are transformed from their fresh, natural state into a hard-frozen state that prevents spoilage and decay and preserves them for long periods ....

> It occurs to us there is a close analogy between applying heat to foodstuffs in order to sterilize and preserve them and subjecting food to below zero temperatures for several days for a similar purpose. Freezing appears to be as clearly processing as cooking does. All concede pasteurizing milk is processing.... What was done here ... seems analogous to pasteurization.·

*Id.* at 441.

The Iowa court's analogy is persuasive and consistent with our own notions of what constitutes processing. Applying the *Mid–America Dairymen* test, we find that freezing and crusting dressed birds works a transformation that results in a product with a different use and identity, a product that all parties agree has a market value. We therefore hold that the initial freezing and crusting of foodstuffs may constitute processing for the purposes of the statutory exemption in § 144.030.2(12).

This leaves the question of whether the mere chilling or cooling of the birds and cooked poultry products may also constitute processing. The AHC determined that "cooling to maintain temperature" is not processing, presumably because merely "maintaining" a temperature does not work a transformation.

We agree that cooling in the sense of providing a cool environment so as to maintain a temperature can not be processing because no transformation takes place. But Hudson is not claiming an exemption for the electricity used to *maintain* already chilled food (i.e., electricity used in storage facilities). Rather, Hudson seeks the exemption for the electricity used to *reduce* the temperature of the birds and cooked poultry products. Prior to the chilling procedures, the dressed birds maintain an internal temperature of approximately 90 degrees. This is reduced to approximately 40 degrees, as found in the AHC's factual finding 4:

> Hudson cools all remaining dressed birds to forty degrees. That action inhibits enzymatic activity and bacterial growth and increases product longevity for several days.

We note that the AHC's finding—that cooling "inhibits enzymatic activity and bacterial growth and increases product longevity"—is markedly similar to the observations of the Iowa Supreme Court in *Fischer*, which found that the freezing process "prevents spoilage and decay and preserves [the products] for long periods." *Fischer*, 81 N.W.2d at 441. Curiously, the AHC appears to have overlooked its own factual findings in determining that cooling is not processing as a matter of law.

The AHC, however, relied on the *Fischer* court's statement that refrigeration is distinguishable from freezing because "what is done is merely to preserve [perishable foods] in substantially the same condition." This Court itself applied this rationale in *Wetterau, Inc. v. Director of Revenue*, 843 S.W.2d 365 (Mo. banc 1992), in finding that maintaining frozen meat in a frozen state was not processing because it did not transform the meat. However, in *Wetterau*, the meat arrived at the plant frozen and was kept frozen by the plant until shipped; no *change* took place.

The cooling procedure that Hudson performs is more analogous to freezing than to refrigeration. Hudson is not merely maintaining the temperature of the birds; it is actually reducing the temperature of the birds. In doing so, it is slowing enzymatic activity and bacterial growth and increasing the birds' shelf life, just as actual hard freez-

ing or pasteurization would do, both of which are considered to be processing. Indeed, if Hudson were to merely preserve the chickens "in substantially the same condition" as the birds were when they came off the evisceration line, the birds could not be sold for human consumption under USDA regulations. 9 CFR III § 381.66(b) (1995). These chilled birds, known as "fresh" birds, have a new identity and use and market value. We hold, therefore, that the initial chilling of the dressed birds and cooked poultry products for the purposes of preventing spoilage and increasing shelf life may constitute processing.

Having determined that chilling, crusting, and freezing may all constitute processing, the question then becomes whether those processes constitute discrete secondary processing, as Hudson alleges or whether they are merely part of one unitary process, as claimed by the Director and found by the AHC. As stated, Hudson alleges (for purposes of all but the Jefferson Street plant) that primary processing occurs in the production of unchilled dressed birds and that secondary processing occurs with the subsequent chilling, crusting, and freezing. If Hudson has correctly delineated its production stages into primary and secondary processing, it does not have to include its substantial material costs in calculating the total production costs of the alleged secondary processing for which it seeks the exemption. If Hudson cannot show that a new product results from primary processing upon which it conducts secondary processing, then no separation between primary and secondary processing exists.

While this Court has determined that chilling, crusting, and freezing may constitute processing, we find that the record, derived as it is from Hudson, the Director, and the AHC's incomplete understanding of how to draw the line between primary and secondary processing, is an insufficient basis for a determination by this Court as to whether Hudson, in fact, engages in primary and secondary processing. For this reason, the judgment of the AHC must be reversed and the case remanded for a new hearing consistent with this opinion.

It is so ordered.

All concur.