**AQUILA FOREIGN QUALIFICATIONS CORPORATION,**
Respondent,

v.

**DIRECTOR OF REVENUE,** Appellant.

No. SC 91784.

Supreme Court of Missouri,
En Banc.

March 6, 2012.

Jeremiah J. Morgan, Deputy Solicitor General, Attorney General's Office, Jefferson City, for the Director.

Bruce Farmer, Oliver Walker Wilson LLC, Columbia, for Aquila.

MARY R. RUSSELL, Judge.

The issue before this Court is whether a convenience store is exempt from sales and use tax for the electricity it purchases for its food preparation operations. Although section 144.054.2[1] provides a tax exemption for the "processing" of products, this Court holds that the legislature did not intend the term "processing" to include retail food preparation in section 144.054.2. The decision of the administrative hearing commission ("commission") is reversed.

## I. Background

Casey's Marketing Company d/b/a Casey's General Stores is a convenience store engaged in the retail sale of gas, grocery items, various nonfood items, and prepared foods. Aquila Foreign Qualifications Corporation is a utility company selling electricity to residential and commercial customers, including Casey's. Casey's filed a refund claim with the director of revenue for one month's tax paid for a portion of electricity Aquila sold to two Casey's locations in Grain Valley and Greenwood. The director denied the claim. At Casey's request, Aquila filed a complaint challenging the director's final decision denying Casey's refund claim for state sales and use tax paid. The commission, in reversing the director's final decision, decided that a portion of Casey's purchased electricity is exempt from state sales and use tax under section 144.054.2. The commission held that the language of section 144.054 was intended to exempt a broad range of activities, and Casey's food preparation operations are "processing" within the meaning of 144.054.2. The director appeals.[2]

Casey's food preparation operations are minimal. Many of its food products are pre-cooked and only require reheating before consumption.[3] A few items are frozen raw and are required to be heated to temperature before the items are ready for consumption.[4] A few more items require the addition of water along with the application of heat or the freezing of water before the items are ready for consumption.[5]

Casey's serves two food products that require additional preparation steps beyond the addition of water or the application of heat. Pizzas are prepared by mix-

---

1. All citations to section 144.054 are to RSMo Supp.2010 unless otherwise noted.

2. This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

3. For example, Casey's serves "popcorn chicken." To prepare this product for consumption, breaded, pre-cooked frozen pieces of chicken are removed from a freezer and reheated in the oven. When hot, the chicken is placed in a paper cup and placed in a warmer until it is purchased by the consumer.

4. Both the "breaded pork sandwiches" and the "breaded chicken sandwiches" contain breaded patties that are frozen raw and placed in a fryer for a specified period of time. At the end of the frying period, they are placed on a bun, wrapped, and placed in a warmer until the sandwiches are purchased by the consumer.

5. Coffee and cappuccinos are both prepared by adding hot water to ground coffee and cappuccino mix, respectively. Casey's also freezes water and bags ice for sale to the consumer.

ing water and pre-measured flour in a mixer. The resulting dough is cut into portions, weighed, and rolled into a flattened shape. A pizza pan is sprayed with nonstick cooking spray, and the dough is placed on the pan. Sauce, cheese, and other toppings are placed on top of the dough, and the pizza is baked in the oven. The pizza is then placed in a warmer and is either sold whole or by the slice.

Cake donuts also require a few additional steps beyond the addition of water or the application of heat. First, the cake donut flour is measured and mixed in a mixer with water to form cake donut dough. The dough is placed into a hopper, and then a cutter cuts, forms, and drops the dough into a fryer. The donuts are flipped once during the frying process and are then dropped onto a donut tray. Once the donuts are cooled, they are iced, topped, and placed in a display case for sale.

In this appeal, the director contends Casey's is not exempt from state sales and use tax on the portion of electricity it purchases for its food preparation operations under section 144.054.2. Casey's, however, claims it is exempt from sales and use tax on its purchases of electricity under section 144.054.2 because it engages in "processing" as defined by section 144.054.1(1).

## II. Standard of Review

■ To determine whether Casey's is entitled to a tax exemption, this Court must interpret a revenue statute. As statutory interpretation is a question of law, this Court reviews the commission's interpretation of section 144.054.2 *de novo*. *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 435 (Mo. banc 2010). Tax exemptions are strictly construed against

the taxpayer. *Id.* at 436. Exemptions are only allowed on clear and unequivocal proof, with the burden of proof falling on the taxpayer claiming the exemption. *Id.* at 437. Any doubt is resolved in favor of taxation. *Id.*

## III. Analysis

■ At issue in this case is whether the electricity Casey's purchases for the preparation of certain food items qualifies for a tax exemption. Section 144.054.2 exempts from state sales and use tax "electrical energy and gas ... used or consumed in the manufacturing, processing, compounding, mining, or producing of any product...."

To determine whether Casey's is entitled to a sales and use tax exemption on electricity purchased for its food preparation operations, this Court must determine whether Casey's engages in "processing" under section 144.054.2. Although section 144.054.1(1) provides a statutory definition of "processing," the definition itself is ambiguous.

■ "A statute is ambiguous when its plain language does not answer the current dispute as to its meaning." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009). Section 144.054.1(1) provides that "processing" is "any mode of treatment, act, or series of acts performed upon materials *to transform or reduce* them to a different state or thing ...." (emphasis added). Section 144.054 offers no further guidance as to what it means "to transform or reduce" materials. Because the definition of "processing" provided in section 144.054.1(1) is unclear as to the scope of the activities it encompasses, this Court must construe the statute to resolve the ambiguity.[6]

---

**6.** The parties disagree as to the scope of activ-
ities that are included within the definition of

■ This Court resolves ambiguities in statutes by determining the intent of the legislature and by giving effect to its intent whenever possible. *Derousse*, 298 S.W.3d at 895. In determining legislative intent, no portion of a statute is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions. *Util. Serv. Co., Inc. v. Dep't of Labor & Indus. Relations*, 331 S.W.3d 654, 658 (Mo. banc 2011). This Court may apply rules of statutory construction to resolve any ambiguities if the legislative intent is undeterminable from the plain meaning of the statutory language. *Derousse*, 298 S.W.3d at 895. Further, construction of a statute should avoid unreasonable or absurd results. *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 565 (Mo. banc 2010).

There is little precedent analyzing section 144.054, but this Court has interpreted a related exemption under similar facts. In *Brinker*, a restaurant conglomerate argued that kitchen equipment, silverware, chairs and other furniture purchased for use in its restaurants were exempt from state sales and use tax under sections 144.030.2(4)–(5).[7] 319 S.W.3d at 435. Section 144.030.2(5) provides a sales and use tax exemption on machinery and equipment "purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption...."[8] *Brinker* found that restaurants are not "plants" exempt from taxation under sections 144.030.2(4)–(5) because restaurants do not "fabricate," "manufacture," or "mine" products to be sold ultimately for final use or consumption. 319 S.W.3d at 436. Instead, *Brinker* held that restaurants "prepare," "furnish," or "serve" food to the public at retail. *Id.* at 438.

Essential to *Brinker*'s holding was the lack of the terms "restaurant," "preparation," "furnishing," or "serving" in section 144.030.2. *Id.* at 438. Had the legislature intended to exempt those activities from taxation, it would have included those terms in the statute. *Id.* Pursuant to *Brinker*, restaurants are not exempt from sales and use tax under sections 144.030.2(4)–(5). *Id.*

Casey's notes sections 144.030.2(4)–(5), which were at issue in *Brinker*, differ from the statute at issue here in that the *Brinker* statutes do not include an exemption for "processing." Casey's contends the inclusion of "processing" in section 144.054.2 brings it within the sales and use tax exemption. Further, Casey's argues that the inclusion of both the term "processing" in the statute here and the statutory definition of "processing" provided in section 144.054.1(1) make *Brinker*'s interpretation of other revenue statutes inapposite to the interpretation of section 144.054.

Although this Court recognizes that neither the term "processing," nor its statutory definition, appear in sections 144.030.2(4)–(5), *Brinker* is still instructive as to the analysis of section 144.054. As

---

"processing." While Casey's argues that all of its food preparation operations fall within the statutory definition of "processing," this interpretation would exempt from sales and use taxation virtually all electricity used to power activities that modify consumer products in any way. On the other hand, the director posits that the definition of "processing" includes only industrial-type processing operations and not the mere preparation of food.

7. All citations to section 144.030 are to RSMo 2000 unless otherwise noted.

8. Section 144.030.2(4) provides the same exemption for "replacement machinery."

*Brinker* stated, if the legislature intended to exempt "restaurants" from sales and use tax on electricity purchased to "prepare," "furnish," or "serve" food, it would have included language in the statute to indicate that intent.[9] For example, the legislature enacted section 144.020.1(6) to tax the sale of meals at a restaurant by imposing sales tax on "meals and drinks furnished at any ... *restaurant*, eating house, drugstore, ... or other place in which ... meals or drinks are regularly served to the public." (emphasis added). In contrast, section 144.054 contains no reference to "restaurants" and no reference to "preparing," "furnishing," or "serving" food. Instead, the legislature exempted from sales and use tax electrical energy and gas used or consumed in "manufacturing," "processing," "compounding," "mining," or "producing." Section 144.054.2.

Further, this Court's interpretation of "processing" is guided by the statutory maxim of *noscitur a sociis*—a word is known by the company it keeps. *Pollard v. Bd. of Police Comm'rs*, 665 S.W.2d 333, 341 n. 13 (Mo. banc 1984). It is "often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth in statutory construction." *Id.* (internal quotation marks and citation omitted). Section 144.054.2 lists "processing" along with "manufacturing," "compounding," "mining," and "producing." The industrial connotations of those terms in section 144.054.2 indicate that the legislature did not intend "processing" to include food preparation for retail consumption.[10] To so interpret section 144.054.2 would give it unintended breadth. If the legislature intended "processing" to encompass retail food sales by restaurants or convenience stores, it could have used terms such as "preparing," "furnishing," or "serving." *See Brinker*, 319 S.W.3d at 438. But instead it chose industrial-type terms, such as "manufacturing," "processing," "compounding," "mining," or "producing." Section 144.054.2. The legislative intent is further reflected in the Missouri Code of State Regulations. 12 CSR 10–110.621(5)(A) expressly states: "A restaurant preparing food for immediate consumption is not exempt [under section 144.054]. Therefore, all state and local taxes apply."

### IV. Conclusion

Giving effect to the legislative intent and strictly construing the exemption against

9. Casey's is a restaurant insofar as it prepares and serves food to customers. (*See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1936 (3d ed.1993) (defining restaurant as "an establishment where refreshments or meals may be procured by the public.")).

10. This Court has previously interpreted the meaning of the term "processing" before the statutory definition of 144.054.1(1) was enacted. In *Hudson Foods v. Director of Revenue*, this Court found "there is little to no difference between the terms 'processing' and 'manufacturing,' as a practical matter." 924 S.W.2d 277, 278 n. 1 (Mo. banc 1996) (analyzing mass-poultry processing facilities). In *Mid–America Dairymen, Inc. v. Director of Revenue*, this Court also stated that "the meaning of the term 'processing' is ordinarily included within the meaning of the more general and inclusive term 'manufacturing.'" 924 S.W.2d 280, 283 (Mo. banc 1996) (analyzing milk processing activities) (internal quotation marks and citation omitted). Although these definitions of "processing" do not control the statutory definition of "processing" under section 144.054.2, they do provide insight into the legislative intent of section 144.054.2. "When the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." *Cook Tractor Co., Inc. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006).

the taxpayer, this Court holds that the preparation of food for retail consumption is not "processing" within the meaning of section 144.054.2. Casey's is not entitled to a sales and use tax exemption on electricity it purchased to power its food preparation operations. The decision of the commission is reversed.

BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., concur.

PRICE, J., dissents in separate opinion filed.

TEITELMAN, C.J., concurs in opinion of PRICE, J.

WILLIAM RAY PRICE, JR., Judge, dissenting.

I respectfully dissent. The outcome of this case turns on whether Casey's Marketing Company d/b/a Casey's General Stores engages in "processing." "Processing" is the most generic of terms that the General Assembly could have chosen when writing the energy tax exemption provision in section 144.054.2, RSMo Supp.2010. As the principal opinion points out, "processing" is defined in the statute, and the statutory definition confirms that the General Assembly intended the scope of that word to be as broad as possible:

> 1. As used in this section, the following terms mean: (1) **"Processing"**, any mode of treatment, act, or series of acts performed upon materials to transform or reduce them to a different state or thing, including treatment necessary to maintain or preserve such processing by the producer at the production facility. . . .

Section 144.054.1, RSMo Supp.2010. Casey's mixes pizza dough and cooks pizzas, mixes donut dough and fries donuts, heats other food products, and freezes ice. Under section 144.054.1(1)'s definition, mixing, cooking, frying, heating, and freezing all constitute "processing." All these activities involve Casey's performing a "series of acts" on raw "materials" in order to "transform" them into a "different state" in which consumers are willing to purchase them.

The term "processing" is broad, but it is not ambiguous. Its application to the activities in which Casey's engages could not be clearer. "[C]ourts have a duty to read statutes in their plain, ordinary and usual sense. . . . Where there is no ambiguity, this Court does not apply any other rule of construction." *MC Dev. Co. v. Cent. R–3 Sch. Dist. of St. Francois Cnty.*, 299 S.W.3d 600, 604 (Mo. banc 2009) (internal quotation marks and citations omitted). The Court's resort to the maxim of *noscitur a sociis* is, thus, inappropriate here.

Reliance on *Brinker Missouri, Inc. v. Dir. of Revenue*, 319 S.W.3d 433 (Mo. banc 2010), is also inappropriate. Whether or not *Brinker* was rightly decided,[1] that case is not controlling here because it interpreted a different term appearing in a different statute. In *Brinker*, the issue was whether a restaurant's kitchen equipment, tables, chairs and dishes were exempt from the state use and sales taxes. The answer turned on whether those items were "[m]achinery and equipment . . . purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants . . . if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption. . . ." Section 144.030.2(5), RSMo 2000. Neither "plant" nor "manufacturing" were statutorily defined. The *Brinker* Court held that restaurants are not "plants" and that cooking

---

1. *See Brinker*, 319 S.W.3d at 441 (Price, C.J., dissenting).

food does not constitute "manufacturing." But in the instant case, the issue is the interpretation of "processing," which, as noted above, is statutorily defined and unambiguous.

I would affirm the decision of the Administrative Hearing Commission.