BASF CORPORATION, Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. SC 92446.

Supreme Court of Missouri,
En Banc.

Dec. 18, 2012.

Rehearing Denied Feb. 26, 2013.

William B. Pugh, Christopher S. Abrams, Joh R. Dedon and Mark A. Olthoff, Polsinelli Shughart PC, Kansas City, Scott A. Browdy, Chicago, and Drew McEwen, Ryan Law Firm LLP, Austin, TX, for Appellant.

Gary Gardner and Deputy Solicitor Jeremiah J. Morgan, Attorney General's Office, Jefferson City, for Respondent.

**PER CURIAM.**

The issue before this Court is whether an herbicide and pesticide manufacturing plant meets the statutory definition of a "material recovery processing plant" for purposes of the manufacturer qualifying for sales and use tax exemptions provided under sections 144.030.2(4) and 144.030.2(12).[1] The manufacturer claims that, as a "material recovery processing plant" under section 144.030.2(4), it is entitled to tax exemptions related to its purchases of chemicals, coal, natural gas, and electricity utilized in its manufacturing processes.

The administrative hearing commission determined that the manufacturer's chemical plant at issue in this case did not qualify as a "material recovery processing plant" for purposes of applying the claimed tax exemptions. This Court agrees and affirms the commission's rejection of the manufacturer's claims that it was entitled to tax exemptions related to operation of a "material recovery processing plant." This Court finds no error in the commission's determinations that the manufacturer's purchases of chemicals, coal, natural gas, and electricity were subject to taxation.

The commission's decision is affirmed.

## I. Background

### A. Manufacturing processes at issue

BASF operates a chemical manufacturing plant in Hannibal that manufactures "finished molecules" used in herbicides and pesticides. Chemical reactors at the

---

1. Unless otherwise indicated, references to section 144.030 are to RSMo Supp.2004. Section 144.030 has been amended subsequent to the version of the statute applicable in this case, and new subdivision numbers reference the exemptions for a "material recovery processing plant." Section 144.030.2(4) was amended significantly effective August 28, 2005, but the amended version found at section 144.030.2(5), RSMo Supp. 2011, is inapplicable to the tax periods at issue in this appeal. The language of 144.030.2(12) was unchanged, but this provision now appears at section 144.030.2(13), RSMo Supp.2011.

plant contain four "process lines" that are used to manufacture the "finished molecules."[2] At the conclusion of the plant's processes, portions of the component parts, ingredients, and other chemicals used in the processes are recovered. For example, certain chemicals are utilized in the manufacturing processes to achieve necessary chemical reactions, but those chemicals are not included in the "finished molecules" that result from the processes. Solvents are used in the manufacturing process to produce solutions needed to make the chemical reactions in the manufacturing process occur more thoroughly and efficiently. The solvents, however, are removed later in the manufacturing process and do not become a part of the "finished molecules" manufactured at the plant. Similarly, a process at the plant utilizes a gas during the process to make the process's chemical reaction safer, but the gas is not a part of the "finished molecules" produced by the process.

Materials recovered during the manufacturing processes are utilized in subsequent production cycles. Each year, recovered materials—both materials recovered internally during the plant's processes and recovered materials purchased from third-party vendors—account for approximately 42 percent (measured by weight) of the total annual inputs used in the production processes of all "finished molecules" produced by the Hannibal plant.

### B. Statutory provisions for "material recovery processing plants"

At issue in this appeal is whether, during various tax periods ranging from 1999 to 2005, BASF's Hannibal plant qualified for sales and use tax exemptions available under sections 144.030.2(4) and 144.030.2(12) for a "material recovery processing plant." In relevant part, those statutes provided sales and use tax exemptions for:

(4) . . . machinery and equipment, and the *materials and supplies required solely for the operation,* installation or construction *of such machinery and equipment, purchased and used to establish new, or to replace or expand existing, material recovery processing plants in this state. For the purposes of this subsection, a "material recovery processing plant" means a facility which converts recovered materials into a new product, or a different form which is used in producing a new product,* and shall include a facility or equipment which is used exclusively for the collection of recovered materials for delivery to a material recovery processing plant. . . .

(12) *Electrical energy used in* the actual primary manufacture, processing, compounding, mining or producing of a product, or electrical energy used in the actual secondary processing or fabricating of the product, or *a material recovery processing plant as defined in subdivision (4) of this subsection,* in facilities owned or leased by the taxpayer, *if the total cost of electrical energy so used exceeds ten percent of the total cost of production,* either primary or secondary, exclusive of the cost of electrical energy so used *or if the raw materials used in such processing contain at least twenty-five percent recovered materials as defined in section 260.200 . . . .*

---

**2.** Three of the four processes are at issue in this case, as BASF removed one of the process lines from its assessment appeal. The parties agreed on an assessment amount due that would be reflected by the removal of this process line from the assessment appeal. The removal of the process line did not impact the refund claims presented by BASF.

Sections 144.030.2(4) and 144.030.2(12) (underlined emphasis added).[3]

By its reference to section 260.200, section 144.030.2(12) incorporates an environmental statute defining "recovered materials." Section 260.200(31),[4] a solid waste management provision, provides that "recovered materials" are "those materials which have been diverted or removed from the solid waste stream for sale, use, reuse or recycling, whether or not they require subsequent separation or processing[.]"

## C. Exemption claims at issue

The tax exemption issues presented in this case originated after the director of revenue performed a sales and use tax audit of BASF's Missouri operations. The director issued BASF use tax assessments on its chemical purchases for the Hannibal plant that covered tax periods from July 1, 2000, through December 31, 2001. BASF appealed the assessments to the commission, maintaining that it was entitled to tax exemptions available to a "material recovery processing plant."

The director also issued BASF partial audit billings for use tax on natural gas purchases it made related to the Hannibal plant during tax periods from 1999 through 2004. BASF remitted payment for those billings and then filed a refund claim. The director denied the refund claim, and BASF appealed the denial of its refund request to the commission.

BASF also filed a refund claim for use tax it had remitted related to its purchases of coal used in its Hannibal plant operations. The use tax related to coal purchases in tax periods from 2002 through 2004 and from February 1, 2005, through September 30, 2005. The refund claim was denied, and BASF also appealed that refund denial to the commission.

BASF further sought a refund of sales tax it had paid related to its purchases of electricity used in the Hannibal plant operations. The electricity sales tax refund request covered sales tax payments made during tax periods from September 1, 2001, through December 31, 2003. This sales tax refund claim was denied, and BASF also appealed that denial to the commission.

## D. The commission's findings

The commission found in favor of the director, finding that BASF was not entitled to its claimed "material recovery processing plant" exemptions. The commission initially found that the Hannibal plant was not a "material recovery processing plant" for purposes of applying the provisions of section 144.030.2(4) because its operations did not fulfill the definition of "recovered materials" pursuant to section 260.200(31). In so finding, the commission articulated that the definition of "recovered materials" in section 260.200(31) is the definition to be used in the section 144.030 tax exemption provisions. The commission determined that the materials recovered by BASF were not "recovered materials" for exemption purposes because they were not shown to be solids. It found the Hannibal plant was not a section

---

3. The exemptions of section 144.030 extend to provide use tax exemptions pursuant to section 144.615(3), RSMo Supp.2011.

4. The current version of section 260.200, found in RSMo Supp.2011, reflects amendments that have been made since the commencement of the tax periods at issue in this case. However, the relevant subdivision defining "recovered materials" has not changed but for its subdivision number (section 260.200(28) to 260.200(31)). For this reason, references in this opinion are to section 260.200(31), RSMo Supp.2011, when discussing the section 260.200 definition for "recovered materials."

144.030.2(4) "material recovery processing plant" because "[t]he chemicals BASF reclaims are not [']recovered materials['] because they are not solid waste and are not diverted or removed from the solid waste stream."

The commission additionally highlighted that the chemicals at issue were "supplies" for purposes of section 144.030.2(4) but were not tax-exempt supplies insofar as they were not shown to be "required solely for the operation" of the plant's exempt machinery or equipment. Although the parties had entered a joint stipulation that provided the chemicals at issue were required solely for the operation of BASF's machinery or equipment, the commission found that this stipulation wrongly sought to inject a legal conclusion that was the province of the commission. The commission found that the facts of BASF's plant operations showed that the chemicals at issue merely acted "in concert with other chemicals and the operation of the machine [to] produce desired chemical reactions and products[, b]ut they do not 'share in the operation of the machine' in the ordinary meaning of the word "operation." The commission articulated that the machines used in BASF's plant could operate without the chemicals at issue. Moreover, the commission determined that BASF failed to show that the chemicals at issue were exempt because they could not show that they were used solely to operate new or replacement machinery and equipment that would qualify for a section 144.030.2(4) exemption.

In addition to rejecting BASF's exemption claims for chemicals, the commission also rejected BASF's assertions that it was entitled to exemptions for its purchases of natural gas and coal. The commission decided that, pursuant to regulations promulgated by the director, coal and natural gas may be exempt as supplies under section 144.030.2(4). The commission found, however, that BASF had failed to carry its burden to show that the purchases of coal and natural gas for which it claimed tax exemptions were purchases of supplies "required solely for the operation" of "qualified" machinery and equipment.[5]

The commission additionally rejected BASF's arguments claiming tax exemptions for its purchases of electricity. It found that, even if the Hannibal plant were to be determined to be a "material recovery processing plant" for purposes of applying section 144.030.2(4), BASF failed to carry its burden to show that it was entitled to its claimed electricity exemptions under the terms of section 144.030.2(12). The commission found that BASF did not provide evidence that its claims satisfied the section 144.030.2(12) requirements that either "the total cost of electrical energy so used exceeds ten percent of the total cost of production ... or [that] the raw materials used in such processing contain at least twenty-five percent recovered materials as defined in section 260.200[ (31) ]."

### E. Arguments on appeal

BASF now seeks review in this Court.[6] It contends that the commission's decision is in error and should be reversed.

BASF maintains that it is a "material recovery processing plant" entitled to sec-

---

5. In issuing this finding, the commission discussed that "qualifying" machinery and equipment for purposes of applying section 144.030.2(4) was machinery and equipment that had been purchased to establish a new, replace an old, or expand an existing material recovery processing plant.

6. As this case requires construction of state revenue laws, this Court has jurisdiction. Mo. Const. art. V, sec. 3.

tion 144.030.2(4) and section 144.030.2(12) tax exemptions. It argues that the chemicals at issue in its appeal satisfy the definition of "recovered materials" because they are used in the Hannibal plant and then recaptured. BASF further asserts that chemicals for which it claimed an exemption satisfy the section 144.030.2(4) requirement that they be used solely in the operation of exempt machinery and equipment. It contends that its joint stipulation established an undisputed fact that the chemicals were used solely in the operation of machinery and equipment, and it contends that the commission erred in rejecting the language used in the joint stipulation.

BASF also contends that the commission found wrongly that it was not entitled to its claimed exemptions for electricity purchases. It argues that the Hannibal plant processes "recovered materials" and that the raw materials used at the plant contain at least 25 percent "recovered materials." BASF asserts that the joint stipulation established this requirement and that the commission erred in not applying the terms of the joint stipulation to find that BASF satisfied the requirements of section 144.030.2(12).

BASF also argues that the commission erred in refusing to apply the parties' joint stipulation establishing that the coal and natural gas for which it claimed tax exemptions were supplies required solely for the operation of exempt machinery and equipment. It notes that neither side argued that there was any other use for the coal and natural gas at issue besides the sole operation of the machinery and equipment.

BASF finally asserts that the commission's decision is in error because it did not apply its decision on a prospective-only basis. It argues that the commission's decision was not reasonably foreseeable or reflected a new policy by contradicting prior regulations and letter rulings.

In response, the director asserts that the Hannibal plant does not qualify as a "material recovery processing plant" because it merely recaptures chemicals that are used in its manufacturing processes so that it can reuse those chemicals for its subsequent manufacturing cycles. The director contends that the chemicals that BASF recovers are not waste, are not converted, are never discarded materials, and are removed from the final product for reuse. Consistent with the commission's conclusions, the director further contends that the chemicals at issue are not tax exempt because BASF failed to show the chemicals were necessary for the operation of its material recovery machinery and equipment. It likewise asserts that BASF failed to show that its purchases of coal and natural gas for which it claimed tax exemptions were purchases required solely for the operation of the plant's material recovery machinery and equipment. The director also argues that the commission rightly concluded that BASF owed taxes on its electricity purchases because BASF failed to prove that the raw materials used in its processes contained at least 25 percent recovered materials. Lastly, the director rejects BASF's contentions that a prospective-only application of the commission's decision is necessary. The director argues that prospective-only application is not required because the commission merely made a reasonable application of the law in a previously unaddressed area.

## II.   Standard of review

To determine whether BASF is entitled to the claimed tax exemptions available to a "material recovery processing plant," this Court must interpret the applicable revenue statutes. This Court reviews the commission's interpretation of

the applicable statutes *de novo*. *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 435 (Mo. banc 2010). Tax exemptions are construed strictly against the taxpayer. *Id.* at 436. Exemptions are allowed only on clear and unequivocal proof, with the burden of proof falling on the taxpayer claiming the exemption. *Id.* at 437. Any doubt is resolved in favor of taxation. *Id.* at 436.

"A statute is ambiguous when its plain language does not answer the current dispute as to its meaning." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009). Ambiguities in statutes are resolved by determining the intent of the legislature and by giving effect to its intent if possible. *Id.* When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012). Rules of statutory construction are used to resolve any ambiguities if the legislative intent is undeterminable from the plain meaning of the statutory language. *Id.* Section 1.090 provides that "technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." Moreover, when construing a statute, this Court considers statutes involving similar or related subject matter when the statutes illuminate the meaning of the statute being construed. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). "All consistent statutes relating to the same subject are in *pari materia* and are construed together as though constituting one act[.]" *Id.* It is presumed that consistent statutes relating to the same subject are intended to be read consistently and harmoniously in their many parts. *Id.*

This Court can affirm the commission's decision in this case even if it does not agree with all of the commission's reasoning for the decision, as the primary concern is the correctness of the commission's result and not its path to reach that result. *See Am. Eagle Waste Indus., LLC v. St. Louis County*, 379 S.W.3d 813, 829 (Mo. banc 2012) (highlighting that the Court can affirm a judgment if it is "cognizable under any theory," even if the trial court's reasoning was wrong or insufficient). This Court will not overturn the commission's factual determinations so long as they are supported by law and, after reviewing the whole record, there is substantial evidence to support them. *See Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 527 (Mo. banc 2003).

### III. The Hannibal plant is not a "material recovery processing plant" pursuant to section 144.030.2(4) because its processes do not remove "recovered materials" as defined by section 260.200(31)

The primary issue to be decided in this appeal is whether the Hannibal plant satisfied the definition of a "material recovery processing plant" under section 144.030.2(4). BASF's exemption and refund claims fail if the plant's material recovery did not fulfill section 144.030.2(4)'s definition providing that a "material recovery processing plant" is "a facility which converts *recovered materials* into a new product, or a different form which is used in producing a new product." *See* sec. 144.030.2(4) (emphasis added).

To determine if the definition set forth in section 144.030.2(4) was satisfied, this Court first must consider the meaning of "recovered materials" as that term is used in the statute. In contrast to section 144.030.2(12), section 144.030.2(4) does not reference a definition for "recovered materials." Before the commission,

the parties advanced differing definitions—BASF sought application of the dictionary definitions of the terms "recovered" and "material," and the director argued for the application of the section 144.030.2(12) definition of "recovered materials" as provided by section 200.260(31) in the context of solid waste management.

The commission found that it should read section 144.030.2(4)'s material recovery provisions in *pari materia* with the other statutes referencing material recovery. It determined that the legislature must have intended the definition of "recovered materials" for section 144.030.2(4) to match the definition applicable to section 144.030.2(12), which expressly references the solid waste management definition for "recovered materials" as provided in section 260.200(31).[7] In this appeal, both parties follow the commission's decision to define "recovered materials" according to the solid waste management definition of that term provided by section 260.200(31). The parties dispute, however, whether the commission rightly interpreted the requirements of section 260.200(31) when assessing whether BASF demonstrated that its plant processes involved "recovered materials."

In the context of solid waste management, section 260.200(31) defines "recovered materials" as "those materials diverted or removed from the solid waste stream...." The commission concluded that the Hannibal plant was not a section 144.030.2(4) "material recovery processing plant" because it found that "[t]he chemicals BASF reclaims are not recovered materials because they are not solid waste and are not diverted or removed from the solid waste stream."

The director argues that most of the issues raised by BASF and most of the grounds on which the commission decided this case need not be addressed. She maintains that the dispositive issue is BASF's failure to demonstrate that the materials it recovered at the Hannibal plant—regardless of their being liquids or gases—satisfied section 260.200(31)'s requirement that "recovered materials" are materials that are "diverted or removed from the solid waste stream."

BASF maintains that the materials it reclaims at the Hannibal plant are "recovered materials" because they are removed for reuse and are thereby prevented from entering (i.e. they are diverted from) the solid waste stream. In contrast, the director argues that the materials do not meet the section 260.200(31) requirement that they be "diverted or removed from the solid waste stream" because they are not materials that ever were intended to become waste and enter a waste stream. The director notes that "solid waste" is defined in section 260.200(43), RSMo Supp. 2011, to be "discarded materials." She argues that BASF's recovered chemicals cannot satisfy the section 260.200(31) definition of "recovered materials" because BASF's material recovery processes are not designed to recover materials to divert them from being discarded. Instead, the director highlights that BASF recovers the chemicals at issue so that they can be reused over and over again in BASF's manufacturing processes.

This Court agrees with the director that the facts presented in this appeal fail to show that BASF's removal of materials in its production processes equates to the diversion of the materials from a solid

7. The commission also reasoned that the section 144.030.2(4) definition for "recovered materials" should be consistent with the solid waste management definition (section 260.200(31)) because the language of the solid waste management definition is mirrored in the definition of "recovered materials" in section 144.054.1(2), RSMo Supp.2011 (though it should be noted that this statute was enacted after the tax periods at issue in this case).

waste stream. Recovering materials to maintain an intended loop of reuse in a manufacturing process is different than re-. covering materials to divert them from being discarded in a waste stream. Accordingly, this Court is not persuaded by BASF's assertions that the commission erred in refusing its exemption claims on the basis of its finding that "[t]he chemicals BASF reclaims are not recovered materials because they ... are not diverted or removed from the solid waste stream." [8] Because BASF did not show that its processes removed "recovered materials" in satisfaction of the definition provided in section 260.200(31), the commission did not err in finding that BASF failed to prove that it was a "material recovery processing plant" entitled to tax exemptions under sections 144.030.2(4) and 144.030.2(12).

## IV.  Conclusion

BASF is not entitled to the sales and use tax exemptions and refunds that it claimed on the premise that its Hannibal plant is a "material recovery processing plant" under section 144.030.2(4). The commission's decision is affirmed.[9]

8.  This Court makes no conclusions about the correctness of the commission's reasoning focused on BASF's recovery of solid waste as opposed to liquids or gases.

9.  BASF argues that the decision in this case should be applied on a prospective-only basis because the commission's decision was not reasonably foreseeable or reflected a new policy by contradicting prior regulations or letter rulings issued by the director.

Pursuant to section 143.903.1, RSMo 2000, an unexpected decision by a court or the commission that imposes a tax assessment is applied only prospectively beginning after the most the recent tax period. This provision, however, does not allow BASF to escape its past tax liabilities that were assessed in this case. Section 143.903.2, RSMo 2000, defines "unexpected" to mean that a "reasonable person would not have expected the decision or order based on prior law, previous policy or

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., and NEILL, Sp.J., concur.

regulation of the department of revenue." But a decision is not unexpected merely because a statute was construed less favorably to a taxpayer than the taxpayer may have liked. *See, e.g., Sneary v. Dir. of Revenue,* 865 S.W.2d 342, 348 (Mo. banc 1993). Nothing prevents an extension of a tax that is "based upon a reasonable extension of the law or a reasonable application of the law to areas not previously specifically addressed." *Id.*

Prospective-only application of the decision in this case is not warranted. The decision in this case does not overrule prior case law or invalidate a previous statute or regulation. And the application of the section 260.200(31) definition of "recovered materials" to determine whether the Hannibal plant was a "material recovery processing plant" provided tax exemptions by sections 144.030.2(4) and 144.030.2(12) cannot be said to have been "unexpected" for purposes of declaring a prospective-only application of this decision. *Cf. Sneary,* 865 S.W.2d at 348.