SUPREME COURT OF MISSOURI
 en banc
S.M.H., ) Opinion issued March 8, 2021
 )
 Respondent, )
 )
v. ) No. SC98675
 )
ERIC SCHMITT, ATTORNEY GENERAL )
OF THE STATE OF MISSOURI, )
and SARAH STEELMAN, )
COMMISSIONER OF ADMINISTRATION, )
STATE OF MISSOURI, )
 )
 Appellants. )

 APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
 The Honorable Patricia S. Joyce, Judge

 S.M.H. seeks compensation from Missouri’s Legal Expense Fund to satisfy a

default judgment against an employee of the St. Louis Public School District. Because the

St. Louis Public School District is not an "agency of the state," the Legal Expense Fund

has no obligation to satisfy the default judgment entered against district employee Allen

Merry.
 Factual and Procedural Background

 The General Assembly created the Transitional School District of the City of

St. Louis pursuant to § 162.1100.1, 1 to exist coterminous with the boundaries of the

St. Louis Public School District. The Transitional School District of City of St. Louis is

the only district subject to §162.1100. The governing board of the Transitional School

District is to consist of three residents of the district: one member appointed by the

governing body of the St. Louis Public School District; one appointed by the mayor of the

City of St. Louis; and one appointed by the president of the board of aldermen of the City

of St. Louis. § 162.1100.2(1).

 In the event the state board of education declares the Transitional School District to

be unaccredited, “the member of the governing board of the transitional district appointed

by the governing body . . . [is] replaced by a chief executive officer [("CEO")] nominated

by the state board of education and appointed by the governor with the advice and consent

of the senate. The [CEO] need not be a resident of the district, . . . shall be paid in whole

or in part with funds from the district, and shall have all other powers and duties of any

other general superintendent of schools.” § 162.1100.1(2). This new entity, consisting of

the CEO and two remaining members of the governing board of the Transitional School

District, is called the Special Administrative Board.

1
 Unless otherwise indicated, statutory citations refer to the 2016 edition of Revised Statutes of
Missouri, updated through the 2019 Cumulative Supplement.
 2
 S.M.H.'s Declaratory Judgment

 S.M.H., a student in the Transitional School District, sued a former teacher, Allen

Merry, alleging sexual abuse occurred while S.M.H. attended a school in the Transitional

School District, and obtained a default judgment against Merry for $4 million. During the

period of abuse alleged in S.M.H.'s lawsuit, the Transitional School District had lost its

state accreditation. As a result, the Special Administrative Board governed the district and

employed Merry.

 After obtaining the default judgment against Merry, S.M.H. filed a declaratory

judgment action against Eric Schmitt as Attorney General and the Commissioner of

Administration (collectively, "the State"), seeking satisfaction of the judgment from the

Legal Expense Fund. The State refused to satisfy the judgment and moved to dismiss the

action, arguing Merry was not an employee of a state agency and, therefore, not covered

by the Legal Expense Fund. S.M.H. moved for summary judgment and the circuit court

sustained the motion, ordering the State to authorize payment from the Legal Expense Fund

to satisfy the default judgment.

 In sustaining S.M.H.'s motion for summary judgment, the circuit court concluded:

(1) Merry was an employee of a state agency and entitled to a defense; (2) Merry properly

tendered defense of S.M.H.'s claims against him to the Attorney General; and (3) Merry

cooperated by tendering his defense to the Attorney General even though the Attorney

General refused on numerous occasions to provide a defense.

 The State appealed, arguing the circuit court erred in entering summary judgment

in S.M.H.'s favor because Merry was not employed by a state agency and an issue of

 3
material fact existed concerning whether Merry tendered the defense of S.M.H.'s claims to

the Attorney General. After opinion by the court of appeals, this Court granted transfer

and has jurisdiction. Mo. Const. art. V, § 10. The judgment is reversed.

 Analysis

 The dispositive issue in this case is whether the Special Administrative Board of the

Transitional School District is an "agency of the state" for purposes of the Legal Expense

Fund. The State argues the Special Administrative Board is a political subdivision, not a

state agency. S.M.H. contends the Special Administrative Board's relationship to the State

transformed it into a state agency. While "agency of the state" is not specifically defined

in § 105.711, this Court concludes the General Assembly did not intend the Legal Expense

Fund to cover the Special Administrative Board of the Transitional School District;

therefore, the Legal Expense Fund was not obligated to satisfy the default judgment entered

against Merry.

 This Court outlined the standard of review for summary judgment in Goerlitz v. City

of Maryville:

 The trial court makes its decision to grant summary judgment based on the
 pleadings, record submitted, and the law; therefore, this Court need not defer
 to the trial court's determination and reviews the grant of summary judgment
 de novo. In reviewing the decision to grant summary judgment, this Court
 applies the same criteria as the trial court in determining whether summary
 judgment was proper. Summary judgment is only proper if the moving party
 establishes that there is no genuine issue as to the material facts and that the
 movant is entitled to judgment as a matter of law. The facts contained in
 affidavits or otherwise in support of a party's motion are accepted as true
 unless contradicted by the non-moving party's response to the summary
 judgment motion. Only genuine disputes as to material facts preclude
 summary judgment. A material fact in the context of summary judgment is
 one from which the right to judgment flows.

 4
333 S.W.3d 450, 452-53 (Mo. banc 2011) (internal quotation marks and citations omitted).

 "This Court reviews questions of statutory interpretation de novo." Ivie v. Smith,

439 S.W.3d 189, 202 (Mo. banc 2014). "This Court's primary rule of statuary interpretation

is to give effect to legislative intent as reflected in the plain language of the statute at issue."

Parktown Imports, Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc 2009).

Additionally, "when construing a statute, this Court considers statutes involving similar or

related subject matter when the statutes illuminate the meaning of the statute being

construed.” BASF Corp. v. Dir. of Revenue, 392 S.W.3d 438, 444 (Mo. banc 2012).

 Only Agencies of the State Are Covered by the Legal Expense Fund

 Section 105.711.2 provides in pertinent part, "[m]oneys in the state legal expense

fund shall be available for the payment of any claim or any amount required by any final

judgment rendered by a court of competent jurisdiction against . . . [t]he State of Missouri,

or any agency of the state[.]" The statute does not provide a definition of the word

"agency." "In the absence of a statutory definition, words will be given their plain and

ordinary meaning as derived from the dictionary." State v. Stewart, 560 S.W.3d 531, 534

(Mo. banc 2018).

 The word "agency" means "a department or other administrative unit of a

government." Webster's Third New Int’l Dictionary 40 (3d ed. 2002). The use of "state

agency" or "agency of the state" in statutory and legal terminology "often refers to a

division or a department of state government performing (typically) the functions of the

executive branch of state government." P.L.S. ex rel. Shelton v. Koster, 360 S.W.3d 805,

 5
815 (Mo. app. 2011). This Court concludes the General Assembly clearly intended for the

Special Administrative Board to function as a school district, not as part of the executive

branch of state government. The Special Administrative Board, therefore, is excluded from

coverage under the Legal Expense Fund.

 The Special Administrative Board Functions as a School District, Not a State Agency

 First, public school districts in Missouri are regularly considered political

subdivisions—not agencies of the state. See Mo. const. art X, § 15 ("The term "other

political subdivision," . . . shall be construed to include . . . school [districts]"). Public

school districts, as political subdivisions, are distinct from "agencies of the state." See

P.L.S., 360 S.W.3d at 812-13. In P.L.S., the court of appeals observed, while school

districts are certainly "governmental instrumentalities," they are not "agencies of the state"

under the "technical, governmental sense." Id. at 813. Instead, school districts are

"political subdivisions" and "considered legally separate, special-purpose, local

governmental subdivisions with powers similar to those of a town, village, or county."

Id. at 815.

 Because school districts are not "agencies of the state," district employees are

routinely excluded from statutory provisions covering employees of "agencies of the state."

See e.g., id. at 815 (noting "for purposes of Chapter 36, . . . the terms 'agency,' 'state agency,'

and 'agency of the state' are defined to specifically exclude 'offices of the elected officials,

the general assembly, the judiciary and academic institutions.'") (quoting § 36.020 (1));

§ 536.010(8) ("'State agency' means each board, commission, department, officer or other

administrative office or unit of the state other than . . . a political subdivision of the

 6
state[.]").

 Under § 162.621.1, the governing body of Transitional School District (including

the Special Administrative Board) "has all the powers of other school districts under the

laws of this state" except as specifically enumerated 2 "and shall perform all duties required

by general laws of school districts so far as they are applicable to the public school affairs

of the city and are consistent with this law." Given the General Assembly's explicit

direction that the Transitional School District (and therefore the Special Administrative

Board) shall have all the same duties and responsibilities as any other public school district

in the state, it follows that the Special Administrative Board is not performing the functions

of the executive branch but rather the functions of a public school district, rendering it a

political subdivision as opposed to an agency of the state.

 Second, all other statutorily created special administrative boards in Missouri are

expressly not agencies of the state. Section 162.081 states, "[n]either the special

administrative board nor any other form of governance appointed under [§ 162.081] nor its

members or employees shall be deemed to be the state or a state agency for any

purpose. . . ." § 162.081.5. While § 162.1100 contains no such clause, the Special

Administrative Board established under § 162.1100.3 is not so different from a § 162.081

2
 Under § 162.1100, the additional powers and duties given to the Special Administrative Board
include: (1) creating an academic accountability plan; (2) exploring alternative forms of
governance for the district; (3) the authority to contract for the operation of schools; (4) oversight
of facility planning, construction, improvement, maintenance, and rehabilitation; (5) authority to
establish school site councils to improve the responsiveness of the schools to the needs of the local
region; and (6) the authority to submit a proposal to district voters regarding the establishment of
neighborhood schools. Again, these are powers emblematic of academic institutions, not state
agencies.

 7
board as to indicate the General Assembly intended to transform the Special Administrative

Board into an agency of the state.

 Section 162.081 outlines what occurs in the event any other public school district in

the state loses accreditation. Under this section, when a school district loses accreditation,

the state board of education has four options. § 162.081.3. One of those options is to

appoint a special administrative board for the operation of all or part of the school district.

§ 162.081.3(2)(a). If the state board of education elects to establish a special administrative

board, the state board itself appoints the new board's members. Id. The new special

administrative board must have at least five members, of which a majority must be

residents of the lapsed district. Id. The special administrative board shall appoint a

superintendent of schools to serve as the chief executive officer of the school district,

having all powers and duties of any other general superintendent of schools in a seven-

director school district. Id. Any special administrative board appointed by the state board

of education under § 162.081.3 "shall be responsible for the operation of the district." Id.

 To operate the school district, a special administrative board formed under

§ 162.081.5 "shall retain the authority granted to a board of education for the operation of

the lapsed school district under the laws of the state . . . and may enter into contracts . . . in

order to deliver high-quality educational programs to the residents of the district[.]" Id.

"The authority of the special administrative board . . . shall expire at the end of the third

full school year following its appointment, unless extended by the state board of

education." Id.

 8
 A board created under § 162.081 is substantially the same in form and function as

the Special Administrative Board. First, both statutes require only a majority of members

of the special administrative board to be residents of the district. Second, neither the

Special Administrative Board CEO, nor any other special administrative board's CEO,

must reside within the lapsed district. Third, both types of CEOs "shall have all other

powers and duties of any other general superintendent of schools." Fourth, both boards

possess the power to contract and are vested with the general duty to "operate" the district

for a fixed period of time.

 The only difference between the Special Administrative Board created by

§ 162.1100 and other boards created under § 162.081 material to this discussion is that the

CEO of the Special Administrative Board is ultimately nominated by the state board of

education and appointed by the governor. S.M.H. argues this stripped the local board of

all power, and transformed the Special Administrative Board into an agency of the state,

answerable to the governor. To the contrary, § 162.1100 specifically grants powers and

duties to the Special Administrative Board as a whole, not solely to the CEO.

 This Court addressed a similar question regarding the classification of the St. Louis

Police Board as an agency of the state in Smith v. State, 152 S.W.3d 275 (Mo. banc 2005).

In Smith, this Court observed: the governor appointed the entire board; the General

Assembly imposed strict duties and requirements on the board, including qualifications of

police officers, the number and of officers of each rank the board may employ, and the

maximum salaries of officers of each rank; the General Assembly expressly prohibited

local authority over the board; and "more than a century of case law . . . consistently

 9
recognized the board as [an agency of the state]." Id. at 279.

 Unlike in Smith, the governor appoints only one Special Administrative Board

member; the powers and duties of the Special Administrative Board are akin to any other

public school district; the General Assembly does not mandate the number of teachers the

Special Administrative Board may employ, nor their salary; the General Assembly has not

expressly prohibited local control; and the relevant caselaw recognizes school districts as

political subdivisions distinct from state agencies. The mere appointment of the CEO by

the governor, therefore, does not transform a political subdivision into a state agency.

 Nevertheless, S.M.H. argues the clear statement in § 162.081 that ordinary special

administrative boards are not state agencies, and the lack of similar language in § 162.1100,

suggests the General Assembly intended for the Special Administrative Board created

under the latter statute to be a state agency. This Court rejects this argument and the

inference on which it is based. As explained above, the state board of education appoints

every member of a § 162.081 board. As a result, this Court's analysis in Smith 3 may have

led to the conclusion that such boards are state agencies. The language in § 162.081 was

meant to clarify that these boards are not state agencies in order to prevent such a

conclusion. Pursuant to § 162.1100, on the other hand, the governor appoints only one of

the three members of the Special Administrative Board following loss of accreditation.

Accordingly, the danger of employing Smith to reach a conclusion running counter to

3
 The General Assembly is keenly aware of this Court's analysis in Smith, as it overruled this
Court's specific result by enacting in 2005 a new iteration of § 105.726.3 that specifically excludes
the board of police commissioners from coverage under the Legal Expense Fund. § 105.726.3.
 10
legislative intent was not present, and the explicit statement included in § 162.081 was not

needed in § 162.1100.

 Summary Judgment Improper

 Because this Court finds the Legal Expense Fund is not liable for damages against

employees of the Transitional School District, S.M.H. is not entitled to judgment as a

matter of law, and the circuit court erred in sustaining S.M.H.'s motion for summary

judgment. Because S.M.H. is not entitled to judgment as matter of law, this Court need

not consider any potential issues of material fact. Rule 84.14.

 Conclusion

 For the reasons set forth above, this Court reverses the circuit court's grant of

summary judgment, and enters judgment in favor of the State. Rule 84.14.

 ___________________________
 Zel M. Fischer, Judge

All concur.

 11