**UNITOG RENTAL SERVICES, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 71457.

Supreme Court of Missouri, En Banc.

Nov. 14, 1989.

Douglas L. Carter, James M. Matthews, Kansas City, for appellant.

William L. Webster, Atty. Gen., Ronald C. Clements, Richard L. Wieler, David G. Edwards, Asst. Attys. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Special Judge.

The sole question presented on appeal is whether equipment used to launder garments is "used in manufacturing", entitling appellant to an exemption from the sales and use tax.

The facts are undisputed. In 1987, respondent assessed $12,249.56 in Consumer Use Tax against appellant for its in-state use of eight pieces of equipment purchased from out-of-state vendors. The assessments were based on respondent's position that appellant was not engaged in "manufacturing" for the purposes of § 144.615 and § 144.030.2(4, 5).[1] On appeal, the Administrative Hearing Commission found that appellant was not liable for assessments on two of the eight pieces of equipment because those machines were used in "manufacturing" and thus were entitled to the Consumer Use Tax exemption. *Section 144.030.2(4, 5).*

Appellant is in the business of furnishing industrial grade uniform clothing and ancillary items to various businesses pursuant to written rental agreement contracts. Under these contracts appellant agrees to furnish garments for the employees of its customer. The style, quantity, quality, color and enhancements of these garments are selected by the customer, who agrees to rent them for the duration of the contract, typically 36 months. Appellant "custom fits" each garment according to the measurements of each of the customer's employees, adds requested logos or company emblems, company and individual employee names, and delivers a supply of garments to the customer. On a cyclical basis, usually once per week, appellant picks up soiled garments and provides fresh ones. The soiled articles are cleaned, decontaminated, treated, dried, pressed and

---

1. All statutory citations are to RSMo 1986.

repaired for the next cycle. Appellant's customers are predominantly engaged in the type of business that causes the employees' garments to become thoroughly infiltrated with industrial soil and, in some instances, toxic contamination. Appellant contends the used garments are utterly useless and of no value until subjected to the particularized processing required to remove whatever type of soil or contaminant may be present.

The Administrative Hearing Commission found that two of the eight pieces of equipment assessed by respondent, a label-making machine and a label-sealing machine, used in the "customizing" process, were used in manufacturing and thus qualified for the exemption. The Commission upheld the assessments on the following machines used in the cleaning process: a steam tunnel, a sleeve press, a tumble dryer, a chemical pump, and two washers. Appellant appeals the Commission's decision concerning these items.

■ *Section 621.193* provides the standard of review of decisions of the Administrative Hearing Commission. Such decisions are upheld when:

> authorized by law and supported by competent and substantial evidence upon the whole record, ... and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency.

*Section 144.030.2* exempts the following from the use tax:

> "(4) Machinery and equipment, ... used for the same purpose as the machinery and equipment replaced by reason of design or product changes, which is purchased for and used directly for *manufacturing* or fabricating a product which is intended to be sold ultimately for final use or consumption;
>
> (5) Machinery and equipment ..., purchased and used to establish new or to expand existing manufacturing, mining,

or fabricating plants in the state if such machinery and equipment is used directly in *manufacturing*, mining or fabricating a product which is intended to be sold ultimately for final use or consumption." (Emphasis added)

Tax exemptions are strictly construed against the taxpayer. *Missouri Public Service Co. v. Director of Revenue*, 733 S.W.2d 448, 449 (Mo. banc 1987).

This Court has employed two different definitions of "manufacturing" within the context of the sales and use tax exemptions. In *West Lake Quarry & Material Co., Inc. v. Schaffner*, 451 S.W.2d 140 (Mo. 1970), we held the process of grinding and crushing rock to various sizes was manufacturing. The Court adopted the Kentucky Court of Appeals' interpretation of the word "manufacturing" in *City of Louisville v. Howard*, 306 Ky. 687, 208 S.W.2d 522, 527 (Ct.App.1947):

> ... if a process takes something practically unsuitable for any common use and changes it so as to adapt it to such common use, then such a process may be legally considered as manufacturing within the meaning of the tax exemption statutes.

*Heidelberg Central, Inc. v. Director of Revenue*, 476 S.W.2d 502 (Mo.1972), offered another definition. There the Court found the printing of items such as business cards, stationery, advertising, business forms, and church bulletins to be manufacturing for the purposes of *§ 144.030*. The Court concluded the printers "... did produce new and different articles by the use of machinery, labor and skill, and they produced products for sale which had an intrinsic and merchantable value and were in forms suitable for new uses." 476 S.W.2d at 506. Further, "... there may be more than one manufacturer in the production processes of many products." *Id.*

In *Wilson & Co., Inc. v. Department of Revenue*, 531 S.W.2d 752 (Mo.1976), we found the conversion of live hogs into food fit for human consumption to be manufacturing for the purpose of the sales and use tax exemption. The *West Lake Quarry* and *Heidelberg* definitions both conformed

to the *Wilson* facts. It takes something "... practically unsuitable for any common use and change[s] it so as to adapt it to such common use," and produces from raw material a new and different item salable for different use.

Finally, in *Jackson Excavating Co. v. Administrative Hearing Commission,* 646 S.W.2d 48 (Mo.1983), the Court again followed the lead of the Kentucky courts in finding the processing of "raw" water into potable water to be manufacturing. Even though both the beginning and ending products were still water, we noted that "... [t]he process before us makes more than a superficial change in the original substance; it causes a substantial transformation in quality and adaptability and creates an end product quite different from the original." 646 S.W.2d at 51.

Appellant contends its cleaning and decontamination process fits the definitions and pronouncements of these decisions. As in *West Lake Quarry,* appellant points out that its processing "takes something practically unsuitable for any common use and changes it so as to adapt it to a common use." As in *Heidelberg Central,* appellant contends that its cleaning machines are "one of the production processes" that converts a previously manufactured product without value into a product having "intrinsic and merchantable value ... in forms suitable for new use." Appellant urges us to continue rejecting the argument asserted by respondent in *Jackson Excavating* that the water purification process could not be manufacturing because it "begins and ends with water" and does not produce a "new" article. We concluded in *Jackson Excavating* that the production of "water fit for use" caused substantial transformation in quality and adaptability and creates an end product quite different from the original. 646 S.W.2d at 51. So too, appellant argues, does its processing produce an article substantially transformed in quality and adaptability from what it was before processing.

The premise underlying appellant's argument is that construction of the term "manufacturing" as used in the exemption stat-ute involves a comparison in the condition, quality, value and usefulness of the product *immediately* before and *immediately* after processing. Although some of the language taken from the cases cited above upon which appellant relies may, at first glance, seem to lend support to this premise, more careful analysis of our decisions demonstrates the fallacy of appellant's theory. In each of the cited cases, the processing found to constitute manufacturing produced a new and different product, dissimilar to any previous condition of the processed article.

We have previously rejected a contention virtually identical to that of appellant herein. In *State ex rel. AMF, Inc. v. Spradling,* 518 S.W.2d 58 (Mo.1974), a taxpayer sought to bring within the sales and use tax exemptions machinery used in the retreading of tires. The taxpayer argued that its machinery, which applied rubber to worn tire casings "practically unsuitable for any common use" and thereby transformed the tire carcass into a usable retreaded tire producing "a new and different article from raw materials" was used in manufacturing and, therefore, was within the exemption of § 144.030.2(4). This Court rejected the taxpayer's argument because retreading amounted to nothing more than repair and restoration of the original article. We held that "[m]anufacture implies a change, but every change is not manufacture. * * * There must be a transformation; a new and different article must emerge having a distinctive name, character or use." *Id.* at 62, quoting from *Zook v. Perkins,* 118 Colo. 464, 195 P.2d 962–63 (banc 1948). The common thread running throughout all of the cases in which we have defined "manufacturing" is the production of an article with a new use different from its original use. In the instant case, as in *AMF, Inc.,* there has not been the manufacture of a new article but the repair and restoration of an old one.

Appellant urges that we repudiate the teaching of *AMF, Inc.,* because the process of "recycling", used by many businesses today, serves the economic objectives underlying the purpose of the exemption from sales and use tax of machinery used in manufacturing. Moreover, appellant ar-

gues, the inclusion of "recycling" within a broad definition of "manufacturing" will enhance and facilitate environmental and social objectives as well as in-state economic development, whereas perpetuation of a restrictive interpretation would frustrate these objectives.

We have consistently construed "manufacturing" as pertaining to the creation of a new product capable of a different use than the original article. The Court's construction of statutory language becomes a part of the statute that must be read as incorporating the judicial interpretation placed upon it. *State v. Crawford,* 478 S.W.2d 314, 317 (Mo.1972), *appeal dismissed,* 409 U.S. 811, 93 S.Ct. 176, 34 L.Ed.2d 66, *rehearing denied,* 409 U.S. 1051, 93 S.Ct. 536, 34 L.Ed.2d 505. The granting or withholding of tax exemptions is uniquely and exclusively a legislative function. If the term "manufacturing" is to be broadened so as to include recycling, such action should come from the Missouri General Assembly.

The decision of the Administrative Hearing Commission is affirmed.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON and BILLINGS, JJ., concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.