

# SUPREME COURT OF MISSOURI
## en banc

AAA LAUNDRY & LINEN SUPPLY CO.,　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Respondent,　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　　　)　　　　No. SC93331
　　　　　　　　　　　　　　　　　　　　　　)
DIRECTOR OF REVENUE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Appellant.　　　　)

### PETITION FOR REVIEW OF A DECISION OF THE ADMINISTRATIVE HEARING COMIMSSION
The Honorable Sreenivasa Rao Dandamudi, Commissioner

### *Opinion issued March 11, 2014*

In *Unitog Rental Services, Inc. v. Director of Revenue*, 779 S.W.3d 568 (Mo. banc 1989), the Court plumbed the sudsy depths of various sales and use tax exemptions and found no application to commercial laundry operations. A quarter century later, AAA Laundry brings substantially similar claims based on substantially similar facts. Because AAA Laundry fails to distinguish or discredit *Unitog*, however, its claims must meet the same end.[1]

---

[1]  These claims bring to mind the phrase "Wash, rinse, and repeat," which has become a "metaphor for following instructions or procedures slavishly without critical thought." Wikipedia (http://en.wikipedia.org/wiki/Wash,_rinse,_repeat) (retrieved March 10, 2014).

## I. Background

AAA Laundry periodically delivers clean uniforms and other items to its customers and picks up soiled ones, which it launders to prepare them for future use. AAA Laundry owns the uniforms, and its customers pay only a "rental" fee for their services. AAA Laundry does not pay sales or use taxes on the uniforms it purchases, but it does collect sales tax on these "rentals."

In the course of laundering its rotating stock of uniforms, AAA Laundry consumes large quantities of various cleaning supplies (collectively referred to as "soap"). When it purchases soap from out-of-state vendors, AAA Laundry pays neither sales nor use taxes on those purchases. Similarly, AAA Laundry's operations generate a significant amount of wastewater that must be treated before it can be released into the city sewer system. In treating this wastewater, AAA Laundry consumes large quantities of chemicals. To the extent it purchases these water treatment chemicals from out-of-state vendors, AAA Laundry also pays no sales or use taxes.

Following an audit, the Department of Revenue calculated that AAA Laundry owes approximately $40,000 in use taxes (plus interest and additions) for the soap and water treatment chemicals purchased from out-of-state vendors. AAA Laundry sought review of these assessments before the administrative hearing commission ("AHC"), which concluded that: (1) AAA Laundry's purchases of soap are exempt from use taxes

under section 144.054.2[2] relating to chemicals used in "processing" a product, and (2) its purchases of water treatment chemicals are exempt under section 144.030.2(15) relating to "machinery" and "equipment" used solely for water pollution abatement. The state sought judicial review of the AHC's decision, and this Court has exclusive jurisdiction. *See* Mo. Const. art. V, § 3. The decision of the AHC is reversed as to both exemptions.

## II. Analysis

In reviewing a decision of the AHC, section 621.193 provides that "the AHC is to be upheld when authorized by law and supported by competent and substantial evidence upon the record as a whole unless it is clearly contrary to the reasonable expectations of the General Assembly." *Street v. Dir. of Revenue*, 361 S.W.3d 355, 357 (Mo. banc 2012). As this statute recognizes, however, no deference to the AHC's decision is appropriate unless the decision is "authorized by law," and this Court reviews *de novo* all questions of statutory interpretation raised in an AHC decision. *Id.*

When construing sales and use tax exemptions, the Court strives to "give effect to the General Assembly's intent, using the plain and ordinary meaning of the words." *Branson Properties USA, L.P. v. Dir. of Revenue*, 110 S.W.3d 824, 825-26 (Mo. banc 2003). An exemption is "strictly construed against the taxpayer," however, and "is allowed only upon clear and unequivocal proof, and doubts are resolved against the party claiming it." *Id.* at 826. Moreover, the Court does not write on a blank slate in each and

---

[2]  Unless otherwise noted, all statutory citations are to RSMo Supp. 2007. The exemption relating to water pollution abatement referenced here as section 144.030.2(15) since has been renumbered but otherwise is unchanged. *See* § 144.030.2(16), RSMo Supp. 2013.

every tax case, and *stare decisis* plays as great a role in such cases as it does in every other area of the Court's jurisprudence.[3]

## A.  The Unitog Decision

In *Unitog*, this Court reviewed the operations of a commercial laundry engaged in substantially the same uniform delivery, pick-up, and laundry services that AAA Laundry provides.  There, this Court rejected the taxpayer's argument that its laundry equipment was exempt from sales or use taxes because laundering qualifies as "manufacturing."  After thoroughly cataloging the Court's prior decisions, *Unitog* holds:

> The premise underlying appellant's argument is that construction of the term "manufacturing" as used in the exemption statute involves a comparison in the condition, quality, value and usefulness of the product *immediately* before and *immediately* after processing.  Although some of the language taken from the cases cited above upon which appellant relies may, at first glance, seem to lend support to this premise, ***more careful analysis of our decisions demonstrates the fallacy of appellant's theory.***  In each of the cited cases, ***the processing found to constitute manufacturing produced a new and different product, dissimilar to any previous condition of the processed article***.

*Unitog*, 779 S.W.2d at 570 (bold emphasis added).  Accordingly, *Unitog* holds that a commercial laundry is not engaged in "manufacturing" because laundering does not "produce[] a new and different product, dissimilar to any previous condition of the processed article."  *Id.*

---

[3]  In *Union Elec. Co. v. Dir. of Revenue*, ___ S.W.3d ___ (Mo. banc 2014), decided concurrent hereto, the Court similarly invoked precedent decided on substantially similar facts to reject the taxpayer's claims.  There, as here, the taxpayer changed exemption statutes (i.e., from section 144.030.2 to section 144.054.2) but failed to distinguish or discredit the precedent that plainly doomed its claims.

Like AAA Laundry in this case, the taxpayer in *Unitog* argued that laundering soiled uniforms "takes something practically unsuitable for any common use and changes it so as to adapt it to a common use." *Id.* *Unitog* rejects this argument, however, and holds that laundering is merely the "repair and restoration of the original article." *Id.* Based on the Court's prior decision that bonding new treads to used and useless tires was not manufacturing, *Unitog* holds that laundering uniforms is not manufacturing because it fails to produce "a new and different article … having a distinctive name, character or use." *Id.* (quoting *State ex rel. AMF, Inc. v. Spradling,* 518 S.W.2d 58, 26 (Mo. 1974). *Unitog* concludes this analysis by holding: "The common thread running throughout all of the cases in which we have defined "manufacturing" is the production of an article with a new use different from its original use." *Id.*

Now, a quarter century later, AAA Laundry contends that it should benefit from the type of sales and use tax exemptions that were denied the taxpayer in *Unitog*, even though AAA Laundry concedes that it is engaged in substantially the same activity that the Court considered and found wanting in *Unitog*. AAA Laundry makes several attempts to distance itself from this remarkably similar precedent but these efforts, both individually and collectively, fail to justify the Court reaching a conclusion in this case so plainly at odds with *Unitog*. Indeed, AAA Laundry's efforts to distinguish *Unitog* are similar to what Lord Bowen referred to as watching "a blind man in a dark room looking for a black hat which isn't there." *See* a Circuit Tramp, '*Pie Powder': being dust from the Law Courts collected and recollected on the Western Circuit* (John Murray 1st ed.

5

1911), at p.25. Accordingly, the Court holds that AAA Laundry is not entitled to the use tax exemptions it seeks.

**B.  Section 144.054.2**

AAA Laundry first tries to differentiate itself from *Unitog* by claiming an exemption under a different statute.  The taxpayer in *Unitog* relied on an exemption in section 144.030.2 for "machinery and equipment ... used directly in ***manufacturing,*** mining or fabricating a product[.]"  *Unitog*, 779 S.W.2d at 569 (emphasis in original).  Here, AAA Laundry invokes an exemption for "chemicals … used or consumed in the manufacturing, ***processing***, compounding, mining, or producing of any product." § 144.054.2 ("emphasis added").  In other words, AAA Laundry's principal stratagem for avoiding *Unitog* is to: (a) claim that "laundering is processing," and (b) argue that *Unitog* is irrelevant because it holds only that "laundering is not manufacturing."

First, the terms "processing" and "manufacturing" were used interchangeably throughout *Unitog* both by the taxpayer and the Court.  *See, e.g., Unitog*, 779 S.W.2d at 570 ("Appellant contends its cleaning and decontamination process fits the definitions and pronouncements" concerning the meaning of "manufacturing").  This was no accident.  The use of these terms in *Unitog* reflects the Court's oft-repeated conclusion that "processing" and "manufacturing" have concentric, if not identical, meanings. Indeed, shortly after *Unitog*, the Court expressly stated that "there is ***little to no difference between the terms*** 'processing' and 'manufacturing,' as a practical matter." *Hudson Foods v. Director of Revenue,* 924 S.W.2d 277, 278 n. 1 (Mo. banc 1996) (emphasis added).  *See also Mid-America Dairymen, Inc. v. Director of Revenue,* 924

6

S.W.2d 280, 283 (Mo. banc 1996) ("the meaning of the term 'processing' is ordinarily

*included within* the meaning of the more general and inclusive term 'manufacturing'")

(emphasis added).

In *Aquila Foreign Qualifications Corporation  v. Director of Revenue*, 362

S.W.3d 1 (Mo. banc 2012), the Court analyzed the term "processing" in

section 144.054.2 – i.e., the same word and statute on which AAA Laundry now rests its

claim – and held that the "industrial connotations of those terms … indicate that the

legislature did not intend 'processing' to include food preparation for retail

consumption." *Id.* at 5.  Just as the Court now relies on the *Unitog* analysis of

"manufacturing" in section 144.030.2 to reject AAA Laundry's attempt to extend

"processing" to cover laundering, *Aquila* relies on a different "manufacturing" case under

section 144.030.2 to reject a taxpayer's argument that "processing" should be extended to

cover other activities that plainly were not "manufacturing." *Aquila*, 362 S.W.3d at 4

(finding that reliance on *Brinker Mo., Inc. v. Dir. of Revenue,* 319 S.W.3d 433, 435 (Mo.

banc 2010) was appropriate because it "interpreted a related exemption under similar

facts").[4]  Accordingly, the Court rejects AAA Laundry's effort to distinguish *Unitog* by

---

[4]   In *Aquila*, the taxpayer also argued – as AAA Laundry does here – that the meaning of "manufacturing" in section 144.030.2 should not be relevant to determining the meaning of "processing" in section 144.054.2 because: (1) section 144.054.1 provides its own definition of the term "processing," and (2) the exemption under section 144.030.2 at issue in *Brinker* (and the separate exemption at issue in *Unitog*) exempted only "manufacturing" and not "processing." These arguments failed in *Aquila*, and so they must fail here.  First, this statutory definition of "processing" is entirely consistent with the definition of "manufacturing" in *Unitog* because it refers to "acts performed upon materials to transform or reduce them to a *different state or thing*," § 144.054.1(1) (emphasis added).  Second, this definition was enacted after – and, therefore, with knowledge of – this Court's settled construction that "processing" is practically the same as, and wholly subsumed within, "manufacturing." *Aquila*, 362 S.W.3d at 5 n.10

7

claiming that its holding regarding "manufacturing" should not control the reach of the term "processing" in this case. *See also, Union Elec. Co.*, ___ S.W.3d at ___ (Mo. banc 2014) (decided concurrent hereto) (following *Aquila* under substantially similar facts and relying on both *Aquila*'s definition of "processing" and its analysis of *Brinker*).

Tacitly conceding that "processing" and "manufacturing" are one and the same, AAA Laundry's second attempt to distinguish *Unitog* is its claim that, under *Jackson Excavating Co. v. Admin. Hearing Comm'n*, 646 S.W.2d 48 (Mo. 1983) (taxpayer converts "raw" water into potable water), laundering can qualify as "manufacturing" even though it yields no "new and different product." But *Unitog* addresses and rejects precisely the same argument: "We concluded in *Jackson Excavating* that the production of "water fit for use" caused substantial transformation in quality and adaptability and creates an end product quite different from the original." *Unitog*, 779 S.W.2d at 570 (citing *Jackson Excavating*, 646 S.W.2d at 51). Because AAA Laundry fails to justify why the Court should be persuaded here by an argument that failed under substantially similar facts in *Unitog*, this second attempt to distinguish *Unitog* on legal grounds also fails.

AAA Laundry argues vehemently that its laundering is a specialized service, that it constitutes sanitization and not just cleaning, and that the market value of its uniforms is virtually zero before it launders them. But these arguments miss the point. The

---

(citing *Cook Tractor Co., Inc. v. Dir. of Revenue,* 187 S.W.3d 870, 873 (Mo. banc 2006) ("When the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action")).

8

question before the Court is not whether AAA Laundering's activities constitute "processing" as a matter of first impression. The question is whether any of these facts provide a sufficient basis for the Court to depart from the reasoning and conclusion in *Unitog*. As discussed above, AAA Laundry's efforts to distinguish *Unitog* on legal grounds (i.e., by relying on "processing" instead of "manufacturing," and by invoking an exemption in section 144.054.2 instead of section 144.030.2) fall far short of justifying a tax exemption for commercial laundering in this case where *Unitog* found none. Similarly, no matter how significant the facts cited by AAA Laundry may be, they also fail to provide any meaningful basis for distinguishing *Unitog* because the same facts were argued with the same vehemence in that remarkably similar precedent. *See Unitog*, 779 S.W.2d at 569 (taxpayer insisted uniforms were "thoroughly infiltrated with industrial soil and, in some instances, toxic contamination" such that "garments are utterly useless and of no value until subjected to the particularized processing required to remove whatever type of soil or contaminant may be present").

Accordingly, the Court holds that the AHC erred in concluding that the use tax exemption in section 144.054.2 applies to AAA Laundry's out-of-state purchases of soap for use in its Missouri laundering operations. *Unitog* declares that commercial laundering does not constitute "manufacturing," and this holding applies equally to the nearly synonymous term "processing." Because AAA Laundry neither asks this Court to overrule *Unitog* nor presents a sufficiently compelling legal or factual basis to distinguish that case and justify the Court reaching a contrary conclusion here, the Court holds that

*Unitog* compels the conclusion that AAA Laundry is not entitled to the use tax exemption in section 144.054.2.

### C.     *Section 144.030.2(15)*

AAA Laundry contends that its out-of-state purchases of wastewater treatment chemicals are exempt from use taxes because those chemicals are "machinery or "equipment" that is "purchased or leased and used solely for the purpose of preventing, abating or monitoring water pollution." §144.030.2(15). AAA Laundry has purchased various machines and other pieces of equipment to treat the wastewater generated by its laundering operations, and the state does not contest that these purchases were exempt from sales and use taxes under this provision. Instead, the dispute in this case involves AAA Laundry's attempt to expand this exemption to cover its purchases of wastewater treatment chemicals. It argues that these chemicals are essential components of its wastewater treatment machinery and equipment and, therefore, must either be "equipment" in their own right or treated as a constituent part of the wastewater treatment machinery.

As above, the Court's decision on this question already has been made. In *Walsworth Pub. Co., Inc. v. Dir. of Revenue*, 935 S.W.2d 39, 40 (Mo. banc 1996), a yearbook publisher argued that its purchases of phototypesetting paper, one piece of which was consumed as an integral part of preparing each yearbook page for publishing, were exempt from sales taxes because the paper constituted "equipment" under one of the exemptions in section 144.030.2. Consulting *Webster's Third New International Dictionary*, the institutional dictionary of choice, *Walsworth* holds that "equipment"

10

means "all the fixed assets other than land and buildings of a business enterprise." *Id.* at 40. "Under this definition, *equipment must have a degree of permanence* to the business. *Items consumed in one processing are not 'fixed'* in any sense." *Id.* (emphasis added).

Here, AAA Laundry's water treatment chemicals that are consumed during the treatment of its wastewater are not "equipment" for the same reason that the phototypesetting paper consumed in the publication process in *Walsworth* was not "equipment." Both are "[i]tems consumed in one processing;" therefore, neither have any "degree of permanence." *Id.* Using this same logic, AAA Laundry's water treatment chemicals also cannot meet the "fixed asset" definition of "machinery." The Court does not doubt that these chemicals are essential or that the wastewater treatment machines and equipment would not work without them. But this does not transform these chemicals – which necessarily are *consumed* during the treatment process – into "equipment" or "machinery." *Walsworth* draws the line for "equipment" or "machinery" between fixed assets and consumables,[5] and AAA Laundry provides no basis for abandoning such a clear and easily applied test here.

---

[5] *Walsworth* emphasizes that the exemption at issue there also applied to "*materials and supplies solely required for the installation or construction of such machinery and equipment*." *Walsworth*, 935 S.W.2d at 40 (emphasis added). This narrow exemption for "materials and supplies" provides ample proof that such consumables could not also be included within the meaning of the terms "machinery" or "equipment." *Id.* The exemption on which AAA Laundry relies, though not the same as the one at issue in *Walsworth*, *includes the very same language*. *See* § 144.030.2(15) ("materials and supplies solely required for the installation, construction or reconstruction of [wastewater treatment] machinery [or] equipment"). Accordingly, this limited exemption for consumables in section 144.030.2 (15) proves here, just as in *Walsworth*, that consumables such as these chemicals cannot be included in the general terms "machinery" or "equipment."

11

Accordingly, the Court holds that the AHC erred in concluding that the use tax exemption in section 144.030.2(15) applies to AAA Laundry's out-of-state purchases of wastewater treatment chemicals for use in its Missouri laundering operations. *Walsworth* declares that "equipment" – and, by necessary extension, "machinery" – refers only to fixed assets or items that have some degree of permanence and, specifically, that neither term includes consumables. Because AAA Laundry neither asks this Court to overrule *Walsworth* nor presents a sufficiently compelling legal or factual basis to distinguish that case and justify the Court reaching a contrary conclusion here, the Court holds that *Walsworth* compels the conclusion that AAA Laundry is not entitled to the use tax exemption in section 144.030.2(15).[6]

## III. Conclusion

For the reasons stated above, the decision of the AHC is reversed and the matter remanded for the limited purpose of calculating the tax, interest and additions owed by AAA Laundry.

_____
Paul C. Wilson, Judge

All concur.

---

[6] AAA Laundry contends that, if the water treatment chemicals are not exempt under section 144.030.2(15), they should be exempt under the same section 144.054.2 on which it relies on – unsuccessfully – to claim an exemption for its laundry soap. Although the Court may affirm the AHC on an alternative basis, it will do so only on a basis that actually was argued there. AAA Laundry fails to demonstrate that it made this argument to the AHC and, therefore, the Court will not consider it further. The only other claim that was argued to, and decided by, the AHC was AAA Laundry's claim that its out-of-state purchases of soap should be exempt from use taxes as the cost of "new items" under section 144.020.1(8). The AHC rejected this claim, and AAA Laundry abandoned it when it failed to file a cross-petition for review and argue it in this Court.