

# SUPREME COURT OF MISSOURI
## en banc

INTERVENTIONAL CENTER )      *Opinion issued November 19, 2019*
FOR PAIN MANAGEMENT,      )
                          )
    Appellant,         )
                          )
v.                        )      No.  SC97582
                          )
DIRECTOR OF REVENUE,      )
                          )
    Respondent.        )

**PETITION FOR REVIEW OF A DECISION OF THE
ADMINISTRATIVE HEARING COMMISSION OF MISSOURI
The Honorable Renee T. Slusher, Commissioner**

Interventional Center for Pain Management petitions this court for review of a

decision from the administrative hearing commission, which determined that certain pain

treatment service items used in compounding medications do not fall under the use tax

exemption in section 144.054.2, [1] for materials used or consumed in compounding a

product. This Court affirms.

---

[1] The time period relevant to the audit runs from 2008 to 2012.  There were no changes to the relevant statutes affecting this case during that time. All statutory citations are to RSMo Supp. 2008 unless otherwise noted.

**Factual and Procedural History**

Interventional Center for Pain Management ("Center") is a Missouri medical office that treats and manages patients' pain. This includes the medical service of injecting pain-relieving drugs administered by an interventional pain physician. As part of its pain management care, Center purchases needles, cannulas, filters, catheters, syringes, and trays for preparing or administering the pain-relieving prescription drugs to achieve the desired therapeutic effect. These devices are purchased from an out-of-state supplier. Such out-of-state purchases for in-state use are typically subject to a tax "for the privilege of storing, using or consuming within this state any article of tangible personal property[.]" § 144.610.1. There are limited, narrow exceptions to this tax, including one for "materials" used in a compounding operation. § 144.054.2. After an audit, the director of revenue discovered that, for at least five years, Center did not file a use tax return or pay use tax on $791,567.28 of out-of-state purchases. The director assessed $69,331.44 in total tax liability for the five-year period from January 2008 to December 2012. Center conceded liability for most of the assessment but contested use tax liability for certain items used for the injection of prescription drug compounds, claiming that the devices are exempt from use tax as "materials" used in a compounding operation under section 144.054.2, RSMo. Center appealed the director's assessment to the administrative hearing commission.

After a hearing, the commission held that Center's pain treatment service items do not qualify for the compounding exemption under section 144.054.2. Center now petitions this Court for review.

**Jurisdiction and Standard of Review**

Because this case involves construction of Missouri's revenue laws, this Court has exclusive jurisdiction. Mo. Const. art V, § 3; *see also* § 621.189. This Court reviews the commission's interpretation of revenue laws *de novo*. *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 128 (Mo. banc 2014). This Court upholds the commission's decision if it is "authorized by law and supported by competent and substantial evidence upon the whole record." *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 179 S.W.3d 266, 268 (Mo. banc 2005); § 621.193, RSMo 2000. Additionally, the commission's decision is upheld "if no mandatory procedural safeguard is violated[] and if the affirmation of the [commission]'s decision does not create a result clearly contrary to the General Assembly's reasonable expectation." *Ben Hur Steel Worx, LLC v. Dir. of Revenue*, 452 S.W.3d 624, 626 (Mo. banc 2015). While statutes imposing a tax are construed strictly in favor of the taxpayer, this Court strictly construes tax exemptions against the taxpayer. *TracFone Wireless, Inc. v. Dir. of Revenue*, 514 S.W.3d 18, 21 (Mo. banc 2017). A taxpayer bears the burden to prove an exemption applies by "clear and unequivocal proof," and "all doubts are resolved against the taxpayer. *Id.* at 21-22. Any doubt regarding the applicability of an exemption "is resolved in favor of taxation." *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012).

**Analysis**

The goal "of statutory interpretation is to give effect to the General Assembly's intent as reflected in the plain language of the statute at issue." *Ben Hur Steel Worx*, 452 S.W.3d at 626 (citing *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672

(Mo. banc 2009)). Section 144.054.2 exempts from sales tax "materials used or consumed in the manufacturing, processing, compounding, mining, or producing of any product[.]" Under the standard of review, Center must unequivocally demonstrate that the contested items are consumed or used in the compounding of a product eligible for the exemption. Specifically, Center has to show three criteria to qualify for the sales and use tax exemption under section 144.054.2: (1) it consumed or used materials (2) during the manufacturing, processing, compounding, or producing (3) of a product. *Ben Hur Steel Worx*, 452 S.W.3d at 626.

The legislature did not define "product" as used in chapter 144, but this Court has held the term "product" means "an output with market value." *Fenix Constr. Co. of St. Louis v. Dir. of Revenue*, 449 S.W.3d 778, 780 (Mo. banc 2014). This Court has also held a "product" "can either be a tangible personal property or a service." *Int'l Bus. Mach. Corp. v. Dir. of Revenue*, 958 S.W.2d 554, 557 (Mo. banc 1997). The taxpayer is not required to actually market the good or service, but the taxpayer must prove the existence of a market. *Fenix*, 449 S.W.3d at 780 (citing *Mid-Am. Dairymen, Inc. v. Dir. of Revenue*, 924 S.W.2d 280, 283 (Mo. banc 1996)). "A strict construction of the term 'product' as used in section 144.054.2 indicates that the fundamental quality defining a product as an 'output with a market value' is that the price of an alleged product is set primarily by competing buyers and sellers." *Id*. By extension, a good or service is a product only if it can be marketed to various buyers. *Id*. To successfully demonstrate eligibility for the use tax exemption under section 144.054.2, therefore, Center must show it uses the disputed items in compounding a product output with market value that can be marketed to various buyers.

4

Center challenges its tax liability for devices, such as syringes, needles, and other items used and consumed in the delivery of its pain management services. Although different in functionality, these items share characteristics that allow them to be analyzed together. Primarily, Center uses these devices for the purpose of safely mixing or administering medications to a patient. These devices are used and consumed in the process of compounding medications and delivering pain management care to patients, so the first two prongs of the three-part test from *Ben Hur Steel Worx* are arguably satisfied. 452 S.W.3d at 626 (providing that, to qualify for the sales and use tax exemption under section 144.054.2, the item must be (1) consumed or used materials (2) during the manufacturing, processing, compounding, or producing process). But the devices fail the final prong of the test in that they are not used or consumed in the compounding of "a product." *Id*.

Center's operations focus on medical care, and the compounding activity takes place to provide the medical care providers with the proper tools to care for their patients. Center argues the injectable drug compounds meet the definition of "product" because the completed compounds can be sold to multiple patients. The medicine it compounds is formulated by condition and joint location, making the compounded medicine usable on more than one patient suffering from similar conditions. In obtaining medical care, however, patients seek out the medical service of pain relief from a treating physician, not a particular type of compounded drug.

The exemption for products used in compounding requires that the injectable drug itself be a marketable "product" with value independent of the medical care. The fact that

5

Center can sell its pain management drugs demonstrates a market for Center's medical expertise in pain management, not a market for the individual drug compounds themselves. In addition to the compounded medicines, Center offers physical and occupational therapy, biofeedback, and psychology services tailored to each patient's needs to create an integrative pain management care plan. When patients arrive at Center, they seek relief from pain and select Center to benefit from the expertise and experience of Center's treating physician. The physician conducts an evaluation and makes a professional judgment as to the optimal course of action for each individual patient, including, but not limited to, injectable prescription drug compounds. The patient does not arrive at Center and select a particular injectable prescription drug compound as an independent consumer. The drugs are not marketable to the patients at the point of compounding. They only have marketable value when they are paired with the medical services and expertise of a pain management physician. Patients select Center and entrust their care to a medical expert, not a type of compounded drug. The marketable product, if there is one, is the professional expertise Center provides.

Center has not demonstrated a market for the drugs themselves, each of which is mixed for the purpose of addressing a particular patient's pain management needs, guarded by a prescribing physician's prescription pad, and administered by a licensed medical professional as part of a comprehensive treatment plan. The fact that the same combination of drugs may prove to be the best pain management technique for multiple patients does not demonstrate a market that is separate from the pain management medical care Center provides.

6

## Conclusion

The burden of proof was on Center to prove its purchases are used in the compounding of a product for sale. Center failed to meet this burden. The commission correctly determined Center did not qualify for the compounding exemption under section 144.054.2. For these reasons, this Court affirms the commission's decision.

_____
W. Brent Powell, Judge

All concur.